E. W. L. HUME AND WIFE v. G. M. CONNELLY et al.

Settlement of Decedent's Estate — Allotment of Land — Sale to Pay Ancestor's Debt — Contribution — Agreement to Pay Debts of Decedent for Part of the Estate — Equity.

Where the land allotted to one heir in the division has been sold to pay ancestor's debts, that heir is entitled to a contribution from the other heirs *pro rata*.

Upon the payment of their *pro rata* share they are entitled in equity to a judgment over against a party who assumed the debts of the ancestor for a part of the estate.

APPEAL FROM BOONE CIRCUIT COURT.

January 11, 1867.

OPINION OF THE COURT BY JUDGE HARDIN:

Thomas Connelly died, in 1835, the owner of a tract of 293 acres of land, a slave named Joe, and some personal estate. He left Mary Connelly, his widow, and eight children, viz.: Granville M. Connelly, Charles C. Connelly, Thomas Connelly, his sons, and his five daughters, Pauline, who intermarried with George Hume, Clemence, who intermarried with David Bagley, Zarilda, who intermarried with Ben Lillis, Amanda, who intermarried with James Whitson, and the appellant Rachael Hume, then unmarried and an infant. The decedent left a will in which he devised his whole estate to his widow for life, with this direction as to the remainder

"and to be divided and allotted to my children at her death as she may direct."

The will does not in terms name an executor, but concludes with the following clause: "I also choose Joseph C. Hughes if he is willing, to assist my wife, Mary Connelly, to settle all of my business, to collect all moneys due and pay all of my just debts."

No order appointing or qualifying a personal representative of the testator is copied in the record, but it appears that said Mary Connelly and Hughes were qualified and acted as executors, and that they took and returned an inventory and made sale of the perishable estate.

It appears that the estate of Thomas Connelly was considerably indebted, and among its liabilities was a claim of Thomas J. Trundle upon a note payable to him for $756.08. This debt seems to have been the subject of litigation first in an action at law against the executors of Connelly, and afterward in a suit in chancery with an injunction obtained by them.

It further appears that on the 21st day of October, 1837, a written agreement was entered into between said Mary Connelly and G. M. Connelly, and Pauline, his wife, George M. Hume, David Bagley, for himself and wife, Zarilda Connelly, and Amanda F. D. Connelly, whereby said Mary surrendered and gave up to them all her interest in the estate of her late husband, except the slave Joe, and including the land, stock, household furniture, farming utensils, etc., and in consideration thereof they, on their part, agreed to pay her $50 on the 24th day of October next thereafter, and a like sum annually thereafter during her life, and they further undertook to discharge and pay all the debts of the estate of Thomas Connelly, deceased, to whomsoever owing, and to hold said Mary harmless on account of any debt of the estate.

After the execution of this contract, and upon the same day, George W. Hume who owned by purchase the interests of Charles C. Connelly and Thomas Connelly, which, with his wife's share, entitled him to three-eighths of the estate, entered into a written agreement with David Bagley, G. M. Connelly, Zarilda Connelly, and Amanda F. D. Connelly, by which it was agreed that said Hume was to take the entire farm of Thomas Connelly, deceased, and all the personal property, stock, farming utensils, and furniture which said Mary, otherwise Polly Connelly, had conveyed to them, for a term of two years, and Hume in consideration thereof bound himself to pay all the debts of Thomas Connelly, deceased, which debts, including that of Trundle, and specified in the agreement, and supposed to amount to $1,532, but if the debts exceeded that sum, still Hume undertook to pay them.

Under this agreement, for the performance of which Hume gave personal security, he took possession of the property and farm and continued in the occupancy of the farm for over five years.

On the 14th day of July, 1838, said Bagley and wife appear to have sold and conveyed their interest in the estate to Hume. And

on the 4th day of June, 1841, G. M. Connelly appears to have sold and conveyed his interest in the estate to Hume.

Said George W. Hume having, as aforesaid, acquired by purchase four-eighths of the land, besides his wife's share of one-eighth part, undertook by his deed, dated the 4th day of April, 1842, to sell and convey the five-eighths of the land so owned by himself and wife to Frederick C. Hume. His deed, however, not being executed by Mrs. Hume was subsequently held inoperative as to her.

In the meantime, in pursuance of an agreement between W. M. C. Hume and others, a division of the land was made, whereby a lot of thirty-seven acres was set apart by metes and bounds as the share of Rachel Connelly, and this division having been confirmed by the County Court, said Mary Connelly, as the executrix of said Thomas Connelly, deceased, on the 14th day of September, 1844, executed to said Rachel a deed to said boundary of thirty-seven acres of land.

The litigation in regard to the claim of Trundle finally resulted in judgments in his favor against the heirs of Thomas Connelly, which amounted, on the 6th day of December, 1852, to the sum of $1,578.37, and under an execution, issued thereon, said thirty-seven acres of land which was valued at $20 per acre, was, with certain other interests, sold on the 6th day of December, 1852, and was subsequently conveyed by the sheriff to the purchaser.

Rachel Connelly having in the meantime intermarried with E. W. S. Hume, they brought this suit in equity on the 15th day of April, 1854, against G. M. Connelly and others, asking a judgment to compel them to contribute and restore to her the amount of her estate which had been subjected to sale to pay the debt of Trundle.

The pleadings, which were unusually elaborate, involved an inquiry as to what relief, if any, the appellants were entitled to by way of contribution, as between themselves and the other heirs of Thomas Connelly, deceased, independent of the agreement of date, the 21st of October, 1837, as well as their right to enforce that agreement for their relief, by substitution for Mary Connelly or Trundle.

The further fact appears that appellants received the sum of $360 on the 6th day of December, 1852, of J. C. Hughes, the

purchaser of their land under an agreement on his part to pay the same in addition to the price paid under Trundle's execution.

The Circuit Court having dismissed the cause, that judgment was revised and reversed in this court, and although it does not appear to have been then decided, whether the appellants were not entitled to relief by the enforcement of the agreement of the 21st of October, 1837, as aforesaid, yet as it is said in the opinion then delivered that

> " if, in point of fact, the other heirs, or any one of them, have paid debts of the estate, for which Mrs. Hume's land, or other estate acquired from her father, was liable, there can be no doubt that for her *pro rata* share of such debts she should account, and to that extent such payment by the other heirs, or any of them, would furnish to them a good defense against her claim for contribution on account of the Trundle debt."

We do not now feel authorized to disregard the payments so appearing to have been made by the other heirs, although according to one construction of the agreement of October, 1837, they were bound to make such payments, as well as to pay the entire debt to Trundle.

Inasmuch as the appellants are thus compelled to contribute to the payment of the debts, it seems to have been proper in adjusting the account between them and the other heirs to allow them their proportion of the rents of the land, and assuming, as we think the commissioner was authorized by the evidence to assume, that the tract of thirty-seven acres of land when sold on the 6th day of December, 1852, was of the value of $925, it was proper to deduct from that sum the $360 paid appellants by Hughes.

The commissioner's last report seems to conform to this basis, and though in some of its details it is obscure and not entirely satisfactory, we have determined with some hesitation to adopt its result, which shows a balance due the appellants of $1,042.68, with interest from the 14th day of September, 1863.

As already intimated, we are of opinion that as the sum found due the appellants is but a balance of the principal and interest of the value of their land taken to satisfy Trundle's debt, which, by the agreement made on the 21st of October, 1837, the appellees, G. M. Connelly, David Bagley, and others, undertook to pay, and which agreement either Mary Connelly or Trundle might have

enforced, the appellants are entitled, by substitution for them, to a judgment for said balance found due them against the obligors in said agreement.

Wherefore, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.